**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-80112** |
| | § | |
| **CS Group LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

---

**FIRST AMENDED PLAN OF REORGANIZATION**

---

## ARTICLE 1. DEFINITIONS, INTERPRETATION, AND CONTROLLING DOCUMENT

**Section 1.01   Defined Terms.**

1.     "*Administrative Claim*" means a Claim against the Debtor for costs and expenses of administration of the Debtor's Estate pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, all fees and charges assessed against the Debtor's Estate under 28 U.S.C. § 1930, and all Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

2.     "*Administrative Claims Bar Date*" means the first business day that is sixty (60) days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

3.     "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein, such Claim or Interest (or any portion thereof) (a) that is evidenced by a Proof of Claim filed by the Claims Bar Date, the Administrative Claims Bar Date, or such other date fixed by the Bankruptcy Court; (b) that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; (c) that has been expressly Allowed under the Plan, any stipulation approved by the Bankruptcy Court, or a Final Order of the Bankruptcy Court; or (d) is compromised, settled, or otherwise resolved to by the Debtor and the Holder of such Claim or Interest; *provided, that* with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof or request for estimation thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order; *provided, further*, that except as otherwise expressly provided herein, the amount of any Allowed Claim or Allowed Interest shall be determined in accordance with the Bankruptcy Code, including sections 502(b), 503(b) and 506 of the Bankruptcy Code. Except as otherwise expressly specified in the Plan or any Final Order, and except to the extent such interest is Allowed pursuant to section 506(b) of the Bankruptcy Code, the amount of an Allowed Claim shall not include interest or any premium on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or

1

Interest is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. "*Allow*," "*Allowance*," and "*Allowing*" shall have correlative meanings.

4.      "*Ballot*" means the applicable form or forms of ballot(s) distributed to each Holder of an Impaired Claim entitled to vote on the Plan on which the Holder indicates either acceptance or rejection of the Plan and (when applicable) any election for treatment of such Claim under the Plan.

5.      "*Bankruptcy Case*" means the voluntary subchapter V chapter 11 case filed by the Debtor pending as Case No. 22-80112.

6.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* as may be amended.

7.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas or any other District Court having jurisdiction over the Bankruptcy Case.

8.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Bankruptcy Case.

9.      "*Cash*" means legal tender of the United States of America and equivalents thereof.

10.     "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of state, federal, or other law, in each case other than the Purchased Claims. For the avoidance of doubt, "Causes of Action" includes: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or to otherwise contest, recharacterize, reclassify, subordinate, or disallow any Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) claims for breach of statutory, equitable, or constructive trusts created under applicable law or in equity or the misappropriation of funds held in trust or other causes of action or claims related thereto; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

11.     "*Church Lenders*" means Walter Alvarez, Alecs Young, and Ryan Kasemeyer, the individual lenders with secured interests in the Church Property.

2

12.    "*Church Loan*" means those certain loan documents dated on or about May 6, 2021, between the Debtor and the Church Lenders as may have been modified from time to time.

13.    "*Church Property*" means the real property located at 912 Church St., Galveston, Texas.

14.    "*Claim*" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

15.    "*Claims Bar Date*" means December 5, 2022 for governmental units and October 13, 2022 for all other Creditors.

16.    "*Claims Objection Deadline*" means the date that is 120 days after the Effective Date subject to being extended on an order of the Bankruptcy Court as provided in Section 8.02.

17.    "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

18.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order.

19.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtor seeks entry of the Confirmation Order, as such hearing may be continued from time to time.

20.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1191 of the Bankruptcy Code.

21.    "*Confirmation*" means the entry of the Confirmation Order in the Bankruptcy Case.

22.    "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

23.    "*Debtor*" means CS Group LLC and, where applicable, the reorganized CS Group LLC.

24.    "*Disputed*" means, with respect to any Claim or Interest, a Claim or Interest (or any portion thereof) that is (a) not yet Allowed, and (b) not disallowed under the Plan, the Bankruptcy Code, or a Final Order or settlement, as applicable.

25.    "*DRM*" means Dore, Rothberg, McKay, P.C. and its successors.

26.    "*Effective Date*" means the fifteenth (15th) day following entry of the Confirmation Order.

27.    "*Estate*" means the estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code.

28.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that has not

been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought; *provided, that*, the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, the local rules of the Bankruptcy Court or applicable nonbankruptcy law, may be filed relating to such order shall not prevent such order from being a Final Order.

29.     "*General Unsecured Claim*" means any Claim against the Debtor as of the Petition Date, other than (a) an Administrative Claim, (b) a Priority Claim, or (c) a Secured Claim.

30.     "*Holder*" means a person or entity holding a Claim or an Interest, as applicable, each solely in its capacity as such.

31.     "*Impaired*" means, when used in reference to a Class, a Class of Claims or Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

32.     "*Insider*" means Carolina Dupuis, the Debtor's sole management member.

33.     "*Insider Claims*" means the claims and causes of action identified as Reserved Litigation Claims that may be brought against the Insider, the Insider's non-debtor businesses, and the Law Office of Michael S. Burg.

34.     "*Interest*" means any membership interest in the Debtor.

35.     "*Jet Lending*" means Jet Lending, LLC.

36.     "*JG Creditors*" means JG Construction and Remodeling Services, LLC, Professional Trim Services, and Jaime Garcia.

37.     "*Lenders*" means collectively the Church Lenders, the Winnie Lenders and Jet Lending.

38.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

39.     "*Petition Date*" means June 6, 2022.

40.     "*Plan*" means this this First Amended Plan of Reorganization.

41.     "*Plan Agent*" means Melissa A. Haselden after her discharge as Subchapter V Trustee, or such other person as may be agreed upon in writing between the Debtor and the JG Creditors.

42.     "*Priority Claim*" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

43.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests entitled to the same treatment in that respective Class.

44.     "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date.

45.     "*Professional*" means any person or entity: (a) employed in the Bankruptcy Case pursuant to a Final Order in accordance with sections 327, 363 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

46.     "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Bankruptcy Case.

47.     "*Properties*" means collectively the Church Property, Winnie Property, and Texas City Property.

48.     "*Reorganized Debtor*" means CS Group, LLC after the Confirmation Date.

49.     "*Reserved Litigation Claims*" means those Claims and Causes of Action identified on **Exhibit C**.

50.     "*Secured Claim*" means any Claim, other than a DIP Claim, (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order entered by the Bankruptcy Court to the extent of the value of the creditor's interest in the Estate's interest in such property, or (b) subject to setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff, in each case as determined pursuant to section 506(a) of the Bankruptcy Code

51.     "*Settlement*" means the Mediated Settlement Agreement dated January 23, 2023, between the Debtor and the JG Creditors and attached to the motion to compromise filed of record at ECF No. 176.

52.     "*Tenant Leases*" means all leases between the Debtor and its tenants at the Winnie Property and the Texas City Property remaining as of the Confirmation Date.

53.     "*Texas City Loan*" means those certain loan documents dated on or about March 5, 2021 between the Debtor and the Jet Lending as may have been modified from time to time

54.     "*Texas City Property*" means the real property located at 732 1st Ave. N., Texas City, Texas.

55.     "*Trustee*" means Melissa A. Haselden, the subchapter V Trustee appointed in the Debtor's Bankruptcy Case.

56.     "*Unimpaired*" means when used in reference to a Class, a Class of Claims or Interests that *are not* impaired within the meaning of section 1124 of the Bankruptcy Code

57.     "*Winnie Lenders*" means Walter Alvarez, Alecs Young, and Rodolfo Ruiz the individual lenders with secured interests in the Winnie Property.

58.     "*Winnie Loan*" means those certain loan documents dated on or about May 6, 2021 between the Debtor and the Winnie Lenders as may have been modified from time to time.

59.     "*Winnie Property*" means the real property located at 918 Winnie St., Galveston, Texas.

**Section 1.02   Rules of Interpretation.** For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan and Disclosure Statement in its entirety rather than to any particular portion of the Plan and Disclosure Statement; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Bankruptcy Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (j) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation".

**Section 1.03   Computation of Time.** Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

**Section 1.04   Controlling Document.** In the event of any inconsistency among this Plan or any exhibit or schedule hereto, the provisions of this Plan shall govern. In the event of any inconsistency among this Plan and the Confirmation Order, the Confirmation Order shall control.

4866-8829-1152, v. 3

## ARTICLE 2.  BANKRUPTCY CASE BACKGROUND

**Section 2.01   Description and History of the Debtor's Business.** The Debtor is owned by Carolina Dupuis its sole Managing Member the Insider in the Bankruptcy Case. As of the Petition Date, the Debtor owned and operated three (3) rental properties in Galveston County, Texas: the Church Property, the Winnie Property, and the Texas City Property.

When purchased, each of the Properties were in need of some repair, and two (2) of the three (3) properties were in a state of serious disrepair. The Debtor's principal contributed approximately $170,000 and $80,000 of her own money to make the Church Property and the Winnie Property livable, respectively. The Texas City Property was purchased from Jet Lending which allowed the Debtor to use approximately $32,000 to rehab the property.

The Church Property was purchased "As-Is" from the Church Lenders on May 6, 2021, for $950,000. The terms of the Church Loan provided that the Debtor would pay $6,000 per month for 12 months beginning on June 1, 2021. The Church Loan also provided that the Debtor would pay an initial balloon payment of $100,000 towards principal on July 1, 2021, and a second balloon payment towards principal on November 1, 2021. The Debtor renegotiated the second balloon payment and cured certain defaults related to the Church Loan on October 21, 2021 and made a single payment of $41,174.00. In December 2021, the Debtor began making monthly payments of $9,000 on the loan to cover the 18% interest on the Church Loan. Between December 1, 2021, and February 28, 2022, the Debtor made all payment due under the Church Loan. According to the Church Lenders, as of May 5, 2022, the payoff amount for the Church Property was $863,000.

The Winnie Property was purchased "As-Is" from the Winnie Lenders on May 6, 2021. The terms of the Winnie Loan provided substantially similar terms to that of the Church Loan. Like the Church Loan, the Debtor renegotiated the second balloon payment and cured certain defaults on the Winnie Loan for $34,514.00 on October 21, 2021. In December 2021, the Debtor also began making monthly payments of $9,000 on the loan. Between December 1, 2021, and February 28, 2022, the Debtor made all payment due under the Winnie Loan. As of May 5, 2022, the payoff amount for the Winnie Property was $953,000.

The Texas City Property was purchased on March 5, 2021, for $357,000.  Jet Lending financed the acquisition of the Texas City Property. The Debtor estimated the current payoff amount for the Texas City Property at $330,000 on the Petition Date. The terms of the Texas City Loan provide for monthly payments of $3,300. The Debtor was current on the Texas City Loan as of May 2022.

The Debtor had made all payments due under both the Church Loan and the Winnie Loan as renegotiated. In addition, in March 2022, the Debtor, the Church Lenders, and Winnie Lenders had an agreement of deferment until third party financing was secured. In April 2022 the Debtor was on the verge of refinancing the Church and Winnie Properties through Apex Mortgage Corp. This would have resulted in the complete payoff of the Church and Winnie Lenders.

On March 31, 2022, the Church and Winnie Lenders sent a notice of foreclosure for both the Church and Winnie Properties along with a letter alleging non-monetary defaults for failure to

carry insurance. Both the Winnie Property and the Church Property were posted for foreclosure on May 3, 2022.

On April 22, 2022, the Debtor filed a petition and application or temporary restraining order and temporary and permanent injunction to halt the foreclosure sale. Although a temporary restraining order with a bond of $1,000 was obtained, the Debtor did not move forward on obtaining a temporary injunction.

September 2, 2022, the Buyers signed the closing documents on the Church Property and thereafter title paid off the Church Lenders. On September 15, 2022, the sale to the Buyers closed and after paying off all liens and closing costs, the title company distributed $546,430.29 to DRM pursuant to an order of the Bankruptcy Court. Funds from such sale proceeds have been distributed to the Debtor in accordance with Orders of the Bankruptcy Court.

On January 13, 2023, the Debtor obtained court authority to sell the Winnie Property with closing currently scheduled for February 28, 2023. [ECF No. 165]. The Debtor estimates net proceeds in excess of $400,000.

On January 23, 2023, the Debtor conducted mediation with the JG Creditors to resolve issues related to the proofs of claim they filed. The mediation resulted in the parties entering into a Settlement.

Under the proposed Settlement, the Debtor will resolve objections it may have to the JG Creditors' proofs of claim, pay the JG Creditors a total of $375,000 for such claims, comprising of an initial payment of $150,000 upon approval of the motion to compromise and an additional $225,000 upon the sale of the Winnie Property. Based on the Settlement the Debtor has incorporated certain changes to this Plan with regards to the Winnie Property. A motion to compromise was filed on February 7, 2023 and is currently pending. [ECF No. 176].

**Section 2.02   Liquidation Analysis.** To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as **Exhibit A**.

**Section 2.03   Ability to Make Future Plan Payments and Operate Without Further Reorganization.** The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has attached an analysis of monthly income and expenses and projections of the performance of the business to support its ability to make all payments required under the Plan as **Exhibit B**. *See* 11 U.S. C. § 1190.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of to make all contemplated plan payments. Assuming the Winnie Property closes by March 31, 2023 and Texas City Property is sold at the end of the Plan term, and after payment of Allowed

Administrative, Priority and Secured Claims, Debtor projects that all unsecured creditors will be paid in full. The final Plan payment is expected to be paid by no later than October 2023.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.,

## ARTICLE 3.  PLAN SUMMARY

**Section 3.01   Payment of Claims.** This Plan proposes to pay Allowed Claims from the Debtor's operating revenues, proceeds from the sales of the Debtor's Properties, and/or other Cash generated during the case.  The Plan proposes to give the Debtor at least until September 30, 2023 to sell or refinance the Properties to pay all claims in full. However, if the Properties are not sold during such time, any remaining Properties will be returned to the Lenders in satisfaction of their secured claims. The estimated term of this Plan is 6 to 7 months.

**Section 3.02   Summary of Classes of Creditors.** This Plan provides for:

[ 2 ] Classes of Secured Claims;

[ 1 ] Classes of Priority Claims;

[ 3 ] Classes of General Unsecured Claims; and

[ 1 ] Classes of Interest Holders.

**Section 3.03   Payment of administrative expenses and priority claims.** This Plan provides for full payment of administrative expenses. All creditors and equity security holders should refer to Articles 4 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE 4.  TREATMENT OF UNCLASSIFIED CLAIMS

**Section 4.01   Claims.** Under section § 1123(a)(1), Allowed Administrative Claims are not in classes.

**Section 4.02   Administrative Claims.** Administrative Claims allowed under Section 503 of the Bankruptcy Code will paid in full in cash (i) on the Effective Date of this Plan if due on or before such date, or if they are not due on the Effective Date, the date upon which they become due; (ii) if such Claims are Professional Fee Claims upon entry of a Final Order by the Bankruptcy Court approving the Professional's fees, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor or Reorganized Debtor.

**Section 4.03   Administrative Claims of Galveston County.** The Debtor shall pay all postpetition taxes (including tax year 2023 and subsequent) due to Galveston County in the ordinary course of business and prior to delinquency under Texas law without the need to file an Administrative Claim and/or request for payment. In the event such postpetition taxes are not paid

prior to delinquency as required under Texas law, penalties and interest shall accrue as provided under Texas law and Galveston County is authorized to immediately commence any and all collection actions authorized under Texas law, in state court without further notice of this Court. All tax liens securing any prepetition and postpetition ad valorem taxes owed to Galveston County are retained until such taxes are paid in full.

**Section 4.04   Post-Confirmation Date Fees and Expenses.** Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtor and/or Reorganized Debtor may employ and pay any professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court and any requirement that professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or any prior order of the Bankruptcy Court governing compensation of Professionals in seeking retention or compensation for services rendered after such date shall terminate.

## ARTICLE 5.  TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**Section 5.01   Class 1: Secured Claims.** ☒ Impaired ☐ Unimpaired

(a)  Class 1(a) – Winnie Property

(i)  *Classification:* Class 1(a) consists of the Holders of Secured Claims held against the Winnie Property.

(ii)  *Treatment:* Each Holder of an Allowed Class 1(a) Claim shall retain its lien against the Winnie Property.  In the event the Debtor does not close the sale to its current buyer by March 31, 2023, the Plan Agent will market and sell the Winnie Property as provided in Sections 6.05 and 6.06. The proceeds from the sale of the Winnie Property will be used to pay all Allowed Class 1(a) Claims in full.

During the marketing period, the Winnie Lenders shall receive interest payments of $9,000 per month.  If the Winnie Property is under contract before September 30, 2023, the Reorganized Debtor will have an opportunity to close under that specific agreement. If the Reorganized Debtor is not under contract by the end of the marketing period, the Reorganized Debtor shall return the Winnie Property to the Winnie Lenders in full satisfaction of their Allowed Claim.  The Reorganized Debtor will also take whatever actions necessary to transfer all leases and tenant deposits it holds at this time.

In the event the Winnie Property is returned to the Winnie Lenders, Galveston County's pre-petition Secured Claim(s) will continue to attach to the Winnie Property in the same priority as before the Bankruptcy Case was filed until paid in full.  In addition, Galveston County's Allowed Secured Claims against the Winnie Property shall accrue interest at the rate of twelve percent (12%) per annum from the Petition Date until the Effective Date and thereafter, Plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debts are paid in full. Further, any and all ad

10

valorem tax liens securing the pre and post-petition taxes will be retained until all such taxes are paid in full.

(iii) *Voting:* Holders of Class 1(a) Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan *provided that*, if the sale of the Winnie Property closes before the Confirmation Hearing, such Class 1(a) will be removed from the Plan and the Holders' votes will not considered for confirmation purposes.

(b)  Class 1(b) – Texas City Property

(i) *Classification:* Class 1(b) consists of the Holders of Secured Claims held against the Texas City Property.

(ii) *Treatment:* Each Holder of an Allowed Class 1(b) Claim shall retain its lien against the Texas City Property.  The Reorganized Debtor shall take efforts to sell or refinance the Texas City Property for a period of nine (9)  months after the Effective Date and use the proceeds from such sale to pay all Allowed Class 1(b) Claims in full.

During the nine (9) month period, Jet Lending shall receive interest payments of $3,500 per month.  If the Texas City Property is under contract or sell or refinance before the expiration of the nine (9) month period, the Reorganized Debtor will have an opportunity to close or refinance under the specific agreement at the time.  If the Reorganized Debtor is not under contract to sell or refinance by the end of the nine (9)  month period, the Reorganized Debtor shall return the Texas City Property to Jet Lending in full satisfaction of its Allowed Claim.  The Reorganized Debtor will also take whatever actions necessary to transfer all leases and tenant deposits.

In the event the Texas City Property is returned to the Jet Lending, Galveston County's pre-petition Secured Claim(s) will continue to attach to the Winnie Property in the same priority as before the Bankruptcy Case was filed until paid in full.  In addition, Galveston County's Allowed Secured Claims against the Texas City Property shall accrue interest at the rate of twelve percent (12%) per annum from the Petition Date until the Effective Date and thereafter, Plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debts are paid in full. Further, any and all ad valorem tax liens securing the pre and post-petition taxes will be retained until all such taxes are paid in full.

(iii) *Voting:* Holders of Class 1(b) Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

**Section 5.02   Class 2: Priority Claims.**          ☒ Impaired          ☐ Unimpaired

(i) *Classification:* Class 2 consists of the Holders of Priority Claims.

(ii) *Treatment:* Each Holder of an Allowed Class 2 Claim shall receive a Pro Rata distribution from the net sale proceeds remaining after payment of (i) all Allowed Secured Claims which attach to any Property that is sold and all (ii) operating expenses.

11

     *(iii) Voting:* Holders of Class 2 claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

**Section 5.03   Class 3: General Unsecured Claims.**    ☐ Impaired    ☒ Unimpaired

  (a)  <u>3(a) JG Creditors' Claims</u>

    *(i) Classification:* Class 3(a) consists of the proofs of claim filed by the JG Creditors and resolved through the Settlement.

    *(ii) Treatment:* The JG Creditors' claims shall be allowed in the amount of $375,000 with an initial payment of $150,000 being due upon approval of the Motion to Compromise and an additional $225,00 become due upon closing of the Winnie Property and payment of all Class 1(a) Allowed Claims in Full.

    *(iii) Voting:* Holders of Class 3(a) claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

  (b)  <u>3(b) – Non-Insider General Unsecured Claims</u>

    *(i) Classification:* Class 3(b) consists of the Holders of General Unsecured Claims who *are not* Insiders.

    *(ii) Treatment:* Each Holder of an Allowed Class 3(a) General Unsecured Claim shall receive a Pro Rata distribution from the sale proceeds remaining from the sale or refinance of the Properties after payment in full of the Allowed Secured Claims attaching to the property sold, after payment of all operating expenses, and provided that all Class 2 Claims are paid in full.

    *(iii) Voting:* Holders of Class 3(b) claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

  (c)  <u>3(c) – Insider General Unsecured Claims</u>

    *(i) Classification:* Class 3(c) consists of the Holders of General Unsecured Claims who *are* Insiders.

    *(ii) Treatment:* Each Holder of an Allowed Class 3(c) General Unsecured Claim shall be permitted to offset any amount due the Debtor but shall otherwise receive no payment until the Allowed Class 1, Class 2, Class 3(a) and Class 3(b) Claims are paid in full in accordance with the terms of this Plan.

    *(iii) Voting:* Holders of Class 3(c) Claims are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

**Section 5.04   Class 4: Interest Holders.**    ☒ Impaired    ☐ Unimpaired

    *(i) Classification:* Class 4 consists of the Holders of Allowed Interest in the Debtor.

12

(ii) *Treatment:* Each Holder of an Allowed Class 4 Interest shall receive no distribution under the Plan on account of said Interests until Allowed Class 1, Class 2, and Class 3 Claims are paid as provided under the terms of this Plan. Thereafter Holders of Allowed Class 4 Interests will receive a Pro Rata share of all remaining funds.

(iii) *Voting:* Class 4 is Impaired under the Plan but Holders of Class 4 Interests are not entitled to vote for or against the Plan.

## ARTICLE 6.  MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 6.01   Funding of Plan.** The source of funds to achieve consummation of and carry out the Plan shall be from (i) Cash as of the Effective Date, (ii) proceeds from the sale the Properties and (iii) the Debtor's operations.

**Section 6.02   Tenant Leases.** The Debtor intends to assume the Tenant Leases. Upon entry of the Confirmation Order, the Tenant Leases will continue to be effective and enforceable with the Reorganized Debtor.

**Section 6.03   Reorganized Debtor as Disbursing Agent.** The Reorganized Debtor shall act as the Disbursing Agent.  The Disbursing Agent shall pay all Allowed Claims including the Allowed Claims and Interests in Classes 1, 2, 3 and 4. On the Effective Date, DRM is authorized to distribute any funds it is holding in trust to the Reorganized Debtor.  The Reorganized Debtor shall pay all operating expenses.

**Section 6.04   Rights and Duties of the Reorganized Debtor**

(i) *Powers of the Reorganized Debtor.* The Reorganized Debtor shall have full power and authority to do the following:

- The Reorganized Debtor shall be authorized to pay all ongoing expenses and make improvements and repairs to the Properties in the ordinary course of business.

- The Reorganized Debtor shall be authorized to file all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Estate.

- The Reorganized Debtor shall be authorized to sell and/or dispose of the Properties in accordance with Reorganized Debtor's business judgment without further order of the Court.

- Except as otherwise provided in Section 6.17, the Reorganized Debtor shall evaluate, prosecute (in Reorganized Debtor's sole discretion), and/or compromise the Reserved Litigation Claims and file objection to the allowance of Claims, in its sole discretion.

- The Reorganized Debtor shall be authorized to take any and all actions, including the filing or defense of any Claim objections necessary to accomplish the above.

13

- The Reorganized Debtor shall be authorized to employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient cash from operations to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Reorganized Debtor.

- The Reorganized Debtor may suspend distribution to any Creditor that has not provided the Reorganized Debtor with its Federal Tax Identification number or social security number, as the case may be.

- The Reorganized Debtor shall keep or cause to be kept books containing an accounting of all receipts and disbursements, which records shall be open to inspection by any Creditor or Interest Holder at all reasonable times.

- The Reorganized Debtor shall be authorized to act on behalf of the Debtor with respect to all contracts and agreements to which the Debtor is a party and to enter into new contracts and agreements on behalf of the Debtor.

- The Reorganized Debtor shall have the right and duty to close the Bankruptcy Case, either separately or contemporaneously, at any time in its sole discretion.

(b) <u>Presumption of Reorganized Debtor's Authority.</u> The Reorganized Debtor has the necessary authority to act under the terms of this Plan and no party shall have the ability to challenge this authority except as provided in the Plan.

(c) <u>Limitation on Reorganized Debtor's Liability.</u> Except as otherwise provided in the Plan, no recourse shall ever be had directly or indirectly against the Reorganized Debtor personally or against any employee of the Reorganized Debtor, specifically excluding any Claim against any Insider on a guaranty, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Reorganized Debtor pursuant to this Plan, or by reason of the creation of any indebtedness by the Reorganized Debtor for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Reorganized Debtor or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Estate and every undertaking, contract, covenant or agreement entered into in writing by the Reorganized Debtor shall provide expressly against the personal liability of the Reorganized Debtor.

The Reorganized Debtor shall not be liable for any act the Reorganized Debtor may do or omit to do as Reorganized Debtor hereunder while acting in good faith and in the exercise of the best judgment of the Reorganized Debtor and the fact that such act or omission was

14

advised, directed or approved by an attorney acting as attorney for the Reorganized Debtor, shall be evidence of such good faith and best judgment; nor shall the Reorganized Debtor be liable in any event except for gross negligence or willful default or misconduct of the Reorganized Debtor. This limited reservation of liability excludes and does not inure to the benefit on any Claim against any Insider for any personal guaranty.

**Section 6.05   Appointment and Compensation of Plan Agent.** If the sale Winnie Property does not close by March 31, 2023 or such other date as may be agreed upon in writing by the Debtor and the JG Creditors, the Plan Agent will be automatically appointed to market and sell the Winnie Property through September 30, 2023 without the need for a bond.  The Plan Agent's appointment may be extended past September 30, 2023, if (a) the Plan Agent has obtained a contract to sell the Winnie Property which satisfies the requirements set out in Section 6.06, (b) the Holders of Class 1(a) and 3(a) agree to her continued appointment, or (c) upon entry of order by the Bankruptcy Court.  The Plan Agent shall be compensated for her efforts at her regular hourly rate payable by the Reorganized Debtor.

**Section 6.06   Duties of Plan Agent.** The Plan Agent will be responsible for taking all actions reasonably necessary to market and sell the Winnie Property. Any sale contemplated by the Plan Agent must be sufficient to pay all closing costs, Class 1(a), and Class 3(a) claims in full unless the Holders of such Claims agree to different treatment in writing.  If the Plan Agent is unable to sell the Winnie Property as contemplated herein, the Plan Agent will be relieved of her duties automatically.

**Section 6.07   Liability of Plan Agent.**

(a)   <u>Limitation of Liability of Plan Agent.</u> The Plan Agent shall not be liable for any act or omission taken or not taken in their capacity as Plan Agent other than for specific acts or omissions resulting from such Plan Agent's willful misconduct, gross negligence or fraud. The Plan Agent, may, in connection with the performance of her duties, and in her sole and absolute discretion, consult with parties she deems necessary to sell the Winnie Property and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith in accordance with advice or opinions given by any such parties.

(b)   <u>Reliance by Plan Agent.</u> Except as otherwise provided herein:

(i)   the Plan Agent may conclusively rely, and shall be protected from liability in acting upon or failing to act upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Plan Agent to be genuine and to have been signed or presented by the properly authorized party or parties;

(ii)   the Plan Agent shall not be liable for any action reasonably taken or not taken by it in reasonable reliance upon the advice of a professional on which she may rely; and

(iii)   the Plan Agent shall have no liability for any act or omission taken in good faith.

15

(c) <u>Delegation Powers.</u> The Plan Agent may execute any of her powers or duties hereunder either directly or by or though agents or attorneys and the Plan Agent shall not be responsible for any misconduct or negligence on the party of any such agent or attorney appointed by her with due care.

**Section 6.08   Establishment and Maintenance of Disputed Claims Reserve:**

(a) Distributions made in respect of any Disputed Claims shall not be distributed but shall instead be held by the Reorganized Debtor. The funds in this account shall be held in trust for the benefit of the Holders of all Disputed Claims.

(b) Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any Disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the Holders of Allowed Claims and to be reserved for Disputed Claims shall be made as if all Disputed Claims were Allowed Claims in the full amount claimed by the Holders thereof. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

(c) At such time as a Disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the respective Debtor shall be released from the account and paid by the Debtor to the Holder of such Allowed Claim.

(d) At such time as any Disputed Claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and returned to the Disbursing Agent for distribution to other Creditors holding Allowed Claims.

(e) The Disbursing Agent shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been Disallowed by a Final Order of the Bankruptcy Court as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Court's order of disallowance has been stayed.

**Section 6.09   Delivery of Distributions.** Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

**Section 6.10   Manner of Payment under the Plan.** All payments made by the Disbursing Agent shall be by check and regular mail. However, at the option of the Disbursing Agent, payment may

be made by wire transfer or otherwise provided that the recipient pays all costs that exceed payment by check and regular mail.

**Section 6.11    Time Bar for Cash Payments.** Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

**Section 6.12    Unclaimed Property.** Any distribution unclaimed within ninety (90) days after the last distribution to Holders of Allowed Claims in Class 3 shall be deemed "unclaimed property" under section 347 of the Bankruptcy Code. Unclaimed property shall be returned to the Disbursing Agent and shall be distributed according to the Plan.

**Section 6.13    Fractional Dollars.** Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

**Section 6.14    Minimum Payment.** Any other provision of the Plan notwithstanding, no payments of less than fifty dollars ($50.00) will be made to the Holder of any Allowed Claim and no payments of fractional dollars will be made to any Holder of an Allowed Claim.  If any interim payment to a Creditor is below $50.00 such payment will be retained until the next distribution date. If any final payment that becomes due is in an amount less than $50.00, then such payment is hereby waived, and the funds shall be retained by the Debtor.

**Section 6.15    Distribution Dates.** Whenever any distribution to be made under the Plan is due on a day other than a business day, such distribution will instead be made, without penalty or interest, on the next business day. The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

**Section 6.16    Continued Operations.** The Reorganized Debtor shall continue to operate after the Effective Date.

**Section 6.17    Reserved Litigation Claims.** Except for the Insider Claim, the Debtor reserves the right to pursue all Reserved Litigation Claims listed on **Exhibit C.** Reserved Litigation Claims, other than the Insider Claims, will be pursued solely in the discretion of the Reorganized Debtor. The Insider Claims will be evaluated and, if warranted and beneficial to the Reorganized Debtor and its creditors, pursued by Melissa A. Haselden as a neutral third-party attorney.  The Reorganized Debtor will be responsible for payment of fees and expenses incurred by the appointed attorney in pursuit of the Insider Claims.

17

**Section 6.18   Agreements, Instruments and Documents.** All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan may be executed by the Reorganized Debtor as may become necessary.

**Section 6.19   Further Authorization.** The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan. The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, and rulings.

## ARTICLE 7.   VOTING PROCEDURES AND CONFIRMATION OF PLAN

**Section 7.01   Classes Entitled to Vote.** Each Impaired Class of Claims or Interests that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. Ballots shall be cast and tabulated with respect to Claims against and Interests in each Debtor's Estate. By operation of law, each Unimpaired Class of Claims is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.   Classes 1, 2 and 3 are Impaired and entitled to vote on the plan.

**Section 7.02   Voting Procedures and Requirements.** The Debtor is providing copies of this Plan and Ballots to all known holders of Impaired Claims who are entitled to vote on the Plan. The following voting procedures (the "Voting Procedures") have been established with respect to the amount and classification of Claims and Interests, and the determination of the validity of Ballots submitted, for voting purposes:

- Unless otherwise provided below, a claim will be deemed temporarily allowed for voting purposes in an amount equal to (i) if a timely filed proof of claim has not been filed, the amount of such claim as set forth in the schedules of assets and liabilities, filed by the Debtor or (ii) the amount of such claim as set forth in a timely filed proof of claim.

- If a claim is deemed Allowed in accordance with the Plan, such claim will be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan.

- If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court.

- Ballots that are otherwise validly executed but do not indicate either acceptance or rejection of the Plan will not be counted.

- Only Ballots that are timely received with signatures will be counted. Unsigned ballots will not be counted.

- Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will be counted.

- Ballots that are illegible or contain insufficient information to permit the identification of the creditor, will not be counted.

- If a creditor simultaneously casts inconsistent duplicate ballots, with respect to the same claim, such ballots shall not be counted.

Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots shall be determined by the Bankruptcy Court at the Confirmation Hearing.

---

IN ORDER TO BE COUNTED, EXCEPT TO THE EXTENT THE DEBTOR SO DETERMINES OR AS PERMITTED BY THE BANKRUPTCY COURT PURSUANT TO BANKRUPTCY RULE 3018, BALLOTS MUST BE SIGNED AND RETURNED SO THAT THEY ARE RECEIVED NO LATER THAN 5:00 P.M. (CST) ON _____, 2023, AT THE FOLLOWING ADDRESS:

**Vianey Garza**
**Dorè Rothberg McKay, P.C.**
**16225 Park Ten Place Dr., Suite 700**
**Houston, TX 77084**
**Email: Vgarza@Dorelaw.Com**

**BALLOTS WILL BE ACCEPTED BY REGULAR MAIL OR EMAIL.**

---

As mentioned above, if your Ballot is not signed and returned as described, it will not be counted. If your Ballot is damaged or lost, or if you do not receive a Ballot, you may request a replacement by addressing a written request to Debtor's counsel at the above address by regular mail, facsimile, or email. Please follow the directions contained on the Ballot carefully.

The process of soliciting acceptance of the Plan must be fair and open without outside influence in the form of representations, inducements, or duress of any kind. To the extent that you believe solicitation of your vote from any party is being sought outside of the judicially approved and statutorily defined disclosure requirements and Voting Procedures, please contact counsel for the Debtor.

**Section 7.03   Acceptance or Rejection by Impaired Classes.** Classes of Claims and Interests that are Unimpaired under the Plan are deemed to have accepted the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and (ii) the Holders (other than any Holder designated under § 1126(e)) of more than one half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. A Class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such Class do not entitle the Holders of Claims or Interests in such Class to receive or retain any property under the Plan on account of such Claim or Interest.

19

**Section 7.04   Confirmation of the Plan.** To confirm the Plan, section 1191 of the Bankruptcy Code requires the Bankruptcy Court to make a series of determinations concerning the Plan, including, without limitation: (i) that the Plan has classified Claims and Interests in a permissible manner; (ii) that the contents of the Plan complies with the technical requirements of the Bankruptcy Code; (iii) that the Debtor has proposed the Plan in good faith; and (iv) that the Debtor has made disclosures concerning the Plan which are adequate and include information concerning all payments made or promised in connection with the Plan. The Debtor believes that all of these conditions have been or will be met with respect to the Plan.

The Bankruptcy Code requires that, unless the Cramdown provisions of the Bankruptcy Code (as discussed below) are utilized, as a condition precedent to confirmation, the Plan be accepted by the requisite votes of each Class of Claims and Interests voting as separate Classes. Therefore, the Bankruptcy Court must find, in order to confirm the Plan, that the Plan has been duly accepted. In addition, the Bankruptcy Court must find that the Plan is feasible and that the Plan is in the "best interests" of all holders of Claims and Interests. Thus, even if holders of Claims were to accept the Plan by the requisite number of votes, the Bankruptcy Court is still required to make independent findings respecting the Plan's feasibility and whether the Plan is in the best interests of holders of Claims and Interests before it can confirm the Plan.

**Section 7.05   Consensual Plan.** If all Impaired Classes of Creditors and Interest Holders accept the Plan, the Bankruptcy Court and the Debtor satisfies all requirements of section 1129(a) the Bankruptcy Court will confirm the Plan pursuant to section 1191(a) of the Bankruptcy Code.

**Section 7.06   Non-Consensual Plan.** In the event any Class rejects the Plan, the Debtor will seek to invoke the provisions of Section 1191(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests. The treatment afforded each Creditor in each Class in this event will be the same as that provided for in the Plan as the case may be.

## ARTICLE 8.  CLAIMS ALLOWANCE

**Section 8.01   Allowance of Claims under the Plan.** Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims and Interests against the Debtor if the parties cannot agree upon such allowance. The Plan provides for payment of Allowed Claims but does not attempt to pre-approve the allowance of any Claims.

**Section 8.02   Objection Deadline.** As soon as practicable, but in no event later than one-hundred twenty (120) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

**Section 8.03   Prosecution of Objections.** On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement, or withdrawal of all objections to Claims or Interests may be made by the Debtor and/or Reorganized Debtor.

Objections to Claims and Interests must be filed and served by no later than the Claims Objection Deadline defined by Section 8.02 (subject to such being extended by an order of the Bankruptcy Court). For the avoidance of doubt, the Claims Objection Deadline may be extended on multiple occasions.

**Section 8.04   Disallowance of Claims and Interests.** Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late filed Claim has been deemed timely filed by a Final Order by the Bankruptcy Court.

## ARTICLE 9.   PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 9.01   Assumption of Leases and Executory Contracts.** The Debtor assumes, and if applicable, assigns all Tenant Leases in existence at the time of Confirmation to the Reorganized Debtor. The Debtor also assumes, and if applicable assigns, the executory contracts and unexpired leases listed in the table below as of the Effective Date of the Plan:

| Contract Type | Name of Counterparty | Description of Contract |
|---|---|---|
| N/A | | |
| | | |
| | | |

**Section 9.02   Rejection of Executory Contracts.** Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the Effective Date or under Section 9.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

**Section 9.03   Rejection Claims.** A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the Confirmation Date.

## ARTICLE 10.   EFFECT OF CONFIRMATION

**Section 10.01  Binding Effect.** As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, Reorganized Debtor, any entity acquiring property under the Plan and any Creditor, Interest Holder, or shareholder of the Debtor, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan and whether or not such Creditor or Interest Holder has accepted the Plan.

**Section 10.02  Satisfaction of Claims and Interests.** Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

**Section 10.03 Vesting of Property.** Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all property of the Estate shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders.

**Section 10.04 Preservation of Setoff Rights.** In the event that the Debtor has a Claim of any nature whatsoever against the Holders of Claims, the Debtor and/or Reorganized Debtor may, but is not required to set off against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any Claim that the Debtor has against the Holder of Claims. Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein.

**Section 10.05 Releases. On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtor, and to the maximum extent provided by law, its agents, release and forever discharge all claims and Causes of Action, whether known or unknown, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following (the "Released Parties"):**

> **1. Carolina Dupuis in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtor or its Estates. This is specifically conditioned on the occurrence of the Effective Date.**

> **2. The Debtor's Professionals will be released from any and all claims and liabilities from the Debtor other than gross negligence and willful misconduct or except as otherwise provided under the Professional Code of Responsibility.**

**Section 10.06 Exculpation. Neither the Debtor or Melissa Haselden, the Subchapter V Trustee (the "Exculpated Parties") shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

**Section 10.07 Injunction. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**Section 10.08  Lawsuits.** On the Effective Date, all lawsuits, litigations, administrative actions, or other proceedings, judicial or administrative, in connection with the assertion of Claims against the Debtor, except proof of Claim and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to the Debtor. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions. All lawsuits, litigations, administrative actions, or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtor or any entity proceeding in the name of or for the benefit of the Debtor against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity and shall become property of the Reorganized Debtor to prosecute, settle or dismiss as it sees fit.

**Section 10.09 Insurance.** Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor or any of the Debtor's representatives or agents is or was the insured party.  The Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company is prohibited from denying, refusing, altering, or delaying coverage on any basis regarding or related to either Debtor's bankruptcy, the Plan, or any provision within the Plan.

**Section 10.10  Abandoned Property.** After the Effective Date, the Debtor and/or Reorganized Debtor may, in its discretion, abandon property of the Debtor. Any property whose abandonment is or has been approved by the Court pursuant to the Bankruptcy Code prior to the Effective Date shall remain abandoned forever; shall not thereafter be deemed to be property of the Debtor, the Reorganized Debtor or of any successor to the Debtor; shall not at any time re-vest in the Debtor and/or Reorganized Debtor, and shall not otherwise, whether by conveyance or otherwise, ever become the property of the Debtor and/or Reorganized Debtor.

**Section 10.11  Term of Stays.** Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

## ARTICLE 11.      MODIFICATION OF THE PLAN

**Section 11.01  Pre-Confirmation Modifications.** The Debtor may propose material amendments and modifications of this Plan through the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice.

**Section 11.02  Post-Confirmation Non-Material Modifications.** After the Confirmation Date, the Debtor and/or Reorganized Debtor may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan without need for further supplement or solicitation of this Plan.

**Section 11.03  Consensual Plan Post-Confirmation Modification.** If the Plan is confirmed under 1191(a), then after substantial confirmation of the Plan, the Debtor and/or Reorganized Debtor may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class. Such modifications must be accepted by such affected Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class including any deemed acceptances and rejections provided by section 1193(d) of the Bankruptcy Code. Additional disclosure material that may needed to support such modification must be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules.

**Section 11.04  Non-Consensual Plan Post-Confirmation Modification.** If the Plan is confirmed under 1191(b) the Debtor may modify the plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class if the Debtor satisfied section 1193(c) of the bankruptcy code.

## ARTICLE 12.          DEFAULT

**Section 12.01 Default.** If any of the following events occur, the Debtor and/or Reorganized Debtor will be in breach of this Plan ("**Default**"):

     (a)     Failure to pay any amount due under the Plan when due; or

     (b)     Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

**Section 12.02 Remedy.** Should the Debtor and/or Reorganized Debtor be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Debtor fail to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation, or default, then any Creditor owed a distribution, which the Debtor has failed to make when due, at its option, may declare that the Debtor is in default of this Plan.

## ARTICLE 13.          GENERAL PROVISIONS

**Section 13.01 Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 13.02 Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 13.03 No Admission.** Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by the Debtor of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which the Debtor may possess against any other party. In the event that the Effective Date does not occur, neither the Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of Debtor's cases.

**Section 13.04 Bankruptcy Restrictions.** From and after the Effective Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines. The Disbursing Agent may, on behalf of the Debtor, compromise Claims and/or controversies, post-Effective Date without the need of notice or Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

25

**Section 13.05 Jurisdiction of The Bankruptcy Court.** Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

1.     To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

2.     To estimate, liquidate, classify, or determine any Claim against the Debtor, including claims for compensation or reimbursement;

3.     To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtor and/or Reorganized Debtor and any other entity having rights under the Plan as may be necessary to implement the Plan;

4.     To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

5.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, or vacated;

6.     To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

7.     To adjudicate all Claims to any lien on any of the Debtor's assets;

8.     To hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code;

9.     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

10.     To determine all questions and disputes regarding title to assets of the Debtor and/or Reorganized Debtor or of the Estate, as may be necessary to implement the Plan;

11.     To enforce and to determine actions and disputes concerning the releases contemplated by the Plan, and to require persons holding liens to release liens or Claims in compliance with the Plan and any other orders may be entered;

12.     To fix the value of collateral in connection with determining Claims;

13.     To enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtor whether before or after confirmation, including to determine any and all tax effects of the Plan;

14.     To hear and determine any action or controversy by holders of Allowed Claims; and

15.     To enter a final decree closing the Bankruptcy Cases and making such final administrative provisions for the case as may be necessary or appropriate.

16.     After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

**Section 13.06 Bankruptcy Court Abstention.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case such abstention shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE 14.          DISCHARGE

**Section 14.01 Discharge – Consensual Plan.** If the Debtor's Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d) of the Code as modified by section 1181(a) of the Bankruptcy Code. Notwithstanding the foregoing, the Debtor will not be discharged from any debt imposed and/or preserved under the Plan.

**Section 14.02 Discharge – Non-Consensual Plan.** If the Debtor's Plan is confirmed under section 1191(b) of the Bankruptcy Code, Confirmation of the Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments, or as otherwise provided in § 1192 of the Code. Notwithstanding the foregoing, the Debtor will not be discharged from any debt imposed and/or preserved under the Plan.

## ARTICLE 15.          DISCLAIMERS

**Section 15.01 The Debtor has No Duty to Update.** The statements contained in this Plan are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Plan after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Plan unless otherwise ordered to do so by the Bankruptcy Court.

**Section 15.02 Source of Information.** Counsel for Debtor has relied upon information provided by the Debtor in connection with the preparation of this Plan. Although counsel for the Debtor has

27

performed certain limited due diligence in connection with preparing this Plan, she has not verified independently the information contained herein.

**Section 15.03 No Legal or Tax Advice Provided.** The contents of this Plan should not be construed as legal, business or tax advice. Each creditor or holder of an Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest. This Plan is not legal advice to you.

This Plan may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

**Section 15.04 No Admission Made.** Nothing contained herein shall constitute an admission of any fact or liability by any party (including, without limitation, the Debtor) or be deemed evidence of the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Interests.

**Section 15.05 No Regulatory Agency Approval.** No governmental or other regulatory agency approvals have been obtained as of the date of the mailing of the Plan. Please note, however, that such approvals are a condition to the Plan's Effective Date.

Respectfully submitted,

**CS Group LLC**

By:    _/s/ Carolina Dupuis_
       Carolina Dupuis
       Managing Member

4866-8829-1152, v. 3